UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2003 JAN -8  P 2:01

CIVIL ACTION

U.S. DISTRICT COURT
DISTRICT OF MASS.

RECEIPT # 74292
AMOUNT $ 150
SUMMONS ISSUED Y-3
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE  1-8-03

| | |
|---|---|
| CATHERINE M. GAW and<br>ROBERT B. GAW<br>*Plaintiffs*,<br><br>v.<br><br>DENNIS ETZKORN,<br>GABRIEL CARE, INC., and<br>GABRIAL CARE, LLC<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>) **COMPLAINT**<br>)<br>)<br>)<br>)<br>) **03-10046PBS**<br>) *Referred to M/J Bowler* |

## INTRODUCTION

Plaintiff Catherine M. Gaw, a registered nurse, brings this Complaint for unlawful sexual harassment in violation of Title VII of Civil Rights Act of 1964, § 701, et seq., as amended (42 U.S.C. § 2000e, et seq.), and Massachusetts General Laws chapter 151B, et seq. against Defendants Dennis Etzkorn, her supervisor, Gabriel Care, Inc., her employer; and Gabriel Care, LLC, also for intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract and unjust enrichment.

Specifically, Defendants have engaged in such advances, requests or conduct with a purpose or effect of unreasonably interfering with the Plaintiff's work performance by creating an intimidating, hostile, humiliating, and sexually offensive work environment, and have breached a contract causing Plaintiff to suffer damages, and thereby unjustly enriching Defendants.

Plaintiff filed a Complaint with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission on February 15, 2002. This Honorable Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331, Title VII of Civil Rights Act of 1964, § 701, et seq., as amended (42 U.S.C. § 2000e, et. seq.) In addition, venue is proper as Defendants all reside within the jurisdiction of the Commonwealth of Massachusetts.



Plaintiff Robert B. Gaw, is the husband of Plaintiff Catherine M. Gaw, and files an action against Defendants for loss of consortium. Said action arises from the same case and controversy as the Civil Rights violation.

## PARTIES

1. Plaintiff Catherine M. Gaw (hereafter "Mrs. Gaw"), a married woman, resides at 199 Lepes Road, Tiverton, Rhode Island, and has been a registered nurse since 1980. Between July 1, 2001 and October 12, 2001, she was employed as Program Director for the Group Adult Foster Care program at Gabriel House, Fall River, Massachusetts.

2. Plaintiff Robert B. Gaw (hereinafter "Mr. Gaw"), is the husband of Mrs. Gaw, and resides at 199 Lepes Road, Tiverton, Rhode Island.

3. Defendant Dennis Etzkorn (hereafter "Etzkorn") is an adult individual employed by Defendant Gabriel Care, Inc. as Administrator of Gabriel House, located at 261 Oliver Street, Fall River, Massachusetts. At all times material hereto, Etzkorn was Mrs. Gaw's direct supervisor.

4. Defendant Gabriel Care, Inc., (hereafter "Gabriel House") is a Massachusetts corporation with a principal place of business at 261 Oliver Street, Fall River, Massachusetts. Gabriel House is in the business of providing Group Adult Foster Care services and Adult Foster Care services under programs administered by the Commonwealth of Massachusetts. It houses approximately fifty-five, mostly elderly patients. Defendant Etzkorn is the President, Treasurer and Clerk of the corporation. At all times relevant hereto, Gabriel House had in excess of twenty-five employees.

5. Defendant Gabriel Care, LLC (hereinafter Gabriel Care") is a Massachusetts Limited Liability Corporation organized under the laws of the Commonwealth of Massachusetts with a principal office located at 10 Trailside Road, Medfield, Massachusetts. Defendant Etzkorn and Karen Etzkorn are managers of Gabriel Care

## COUNT I - SEXUAL HARASSMENT

6. Plaintiff incorporates and reaffirms the allegations contained in paragraphs one through five of the Complaint as if more fully set forth herein.

2

7. Prior to becoming employed full time as Program Director on July 1, 2001, Mrs. Gaw worked part time as a registered nurse at Gabriel House.

8. Beginning during her part time employment and continuing through October 12, 2001, Mrs. Gaw was subjected to a work environment pervaded by abuse and harassment that posed a formidable barrier to her full participation in the workplace. Defendant Etzkorn's conduct had the purpose or effect of unreasonably interfering with Mrs. Gaw's work performance by creating an intimidating, hostile, humiliating and sexually offensive work environment. The acts were of a continuing nature and the working conditions became so intolerable that Mrs. Gaw was forced to resign from the position effective October 12, 2001.

9. In her position as Program Director, Mrs. Gaw's responsibilities included monitoring all services provided to residents at Gabriel House. Specific duties included auditing of records, management of staff supervisor of care delivered to residents, and in-service teaching to staff.

10. In early July 2001, Mrs. Gaw asked Etzkorn to reprimand an employee who referred to a female patient as a "cunt." Upon hearing of the incident Etzkorn laughed and said he did not see anything wrong with the language. He then said that he liked the word and wanted to start a campaign to bring it back. Mrs. Gaw informed Etzkorn that she was offended by his use of the word.

11. As her direct supervisor, Mrs. Gaw had daily interaction with Etzkorn. Beginning shortly after the commencement of her employment, Etzkorn would approach Mrs. Gaw and speak of "picking up prostitutes," women with "large breasts" and pornographic sites that he visited on the internet. Mrs. Gaw continually and repeatedly told Etzkorn that she was uninterested in that type of discussion, but he ignored her requests.

12. On or about August 13, 2001, Mrs. Gaw hired a male nurse. Etzkorn referred to this individual as her "boy toy." Etzkorn indicated that "boy toy" was hired for Mrs. Gaw's sexual pleasure, and thereafter never referred to the individual by his given name. On a continuous and regular basis thereafter Etzkorn spoke to Mrs. Gaw about her "boy toy." Etzkorn discussed "nailing a girl on the ledge" in front of "boy toy" and often made other sexual comments in front of "boy toy" and Mrs. Gaw. Mrs. Gaw told Etzkorn that she was very upset with the way he referred to this employee. Etzkorn laughed and continued on virtually a daily basis to refer to the individual as Mrs. Gaw's "boy toy."

13.     During mid July 2001, Mrs. Gaw brought her daughter to Gabriel House to watch "Ron the Magic Show." Etzkorn asked Mrs. Gaw who that "hot blond" was. Mrs. Gaw informed Etzkorn that it was her daughter and that she was only fourteen years old. Etzkorn replied, "she dresses like she is asking for it and she doesn't look fourteen." Mrs. Gaw immediately informed Etzkorn that she was offended by the comment. In response, Etzkorn laughed and said he would "love to go to watch her and her friends play volleyball so he could see them in their shorts."

14.     Because of the outrageous and pervasive nature of his conversations about sexual matters, Mrs. Gaw spoke to other employees about ways to avoid such behavior. Indeed, Mrs. Gaw and a staff social worker tried to develop a strategy to discourage Etzkorn from displaying sexually inappropriate behavior.

15.     Mrs. Gaw reminded Etzkorn that annual sexual harassment seminars were required for the employees and suggested that he not be the one to conduct them because he was often in violation of these rules. In response, Etzkorn laughed and said, "people make a big deal over nothing about that stuff."

16.     During mid September 2001, Etzkorn entered Mrs. Gaw's office and stated he "only gets sex once a month from his wife." He asked Mrs. Gaw "how often do you have sex with your husband?" Mrs. Gaw replied that she found conversations like that inappropriate and requested that he not repeat it. Etzkorn also said he "could not imagine having sex with Cheryl [another employee] because she would most likely bitch and complain like his wife does." Mrs. Gaw told Etzkorn that he should not speak about his wife like that.

17.     Etzkorn told Mrs. Gaw that "it is acceptable to hit a woman who asks for it."

18.     Etzkorn repeatedly said to Mrs. Gaw, "I would like to have an affair with a married woman because there would be no strings attached." Mrs. Gaw requested that he not speak to her in such a manner. Etzkorn replied, "there is a price for everything. If I wanted to have sex with you it might take some time and money but eventually everything has a price, it just depends if I want to pay the price." Mrs. Gaw again requested that he not speak to her in such a manner.

19.     On another occasion, Etzkorn told Mrs. Gaw, "I bet you fool around, nobody is as good as you make yourself out to be. There has got to be more to your past. You are not going to tell me you have been married for twenty years and never fooled around."

20. Etzkorn told Mrs. Gaw that she was "very easily intimidated" and that "he could talk her into doing anything." Mrs. Gaw was very uncomfortable with Etzkorn's threatening tone.

21 During July 2001, Etzkorn said he would "love to loan [Mrs. Gaw] $10,000 so he could 'own' her." The statement made Mrs. Gaw very uncomfortable.

22 During one discussion, Etzkorn told Mrs. Gaw , "If you continue to talk cocky like that, I am going to go over there and GET you." Mrs. Gaw was frightened by the substance, tone and manner of the Etzkorn's words. She told him to stay away.

23 During August, September, and October, Etzkorn's conduct became more outrageous. He asked Mrs. Gaw why she didn't wear tighter clothes to work. He said he wanted to see her and other members of her staff "dress as prostitutes for Halloween." Mrs. Gaw replied that his comments were highly insulting.

24. On numerous occasions, Etzkorn approached Mrs. Gaw from behind and "tickled and pinched" her in a sexually inappropriate manner. She firmly requested that he stop the behavior stating that she needed her personal space. Etzkorn ignored the request and continued his unlawful conduct.

25. Repeatedly Etzkorn would enter Mrs. Gaw's office and close the door with only the two of them present. Etzkorn's actions made Mrs. Gaw feel threatened and she repeatedly asked him to open the office door.

26. During September 2001, Etzkorn approached Mrs. Gaw from behind as she was sitting at her desk chair. He lifted his leg and attempted to sit behind her while she worked at her computer. Mrs. Gaw had to jump up and demand that Etzkorn get off the chair and never again attempt such an act.

27. On one occasion an ambulance driver and one of the nurses' aides were seen entering the unoccupied room of a female patient. The patient complained about someone using her bed, and Mrs. Gaw informed Etzkorn that appropriate actions must be taken. Etzkorn replied that he "wanted to meet the ambulance driver, shake his hand and congratulate him."

28. During September, Etzkorn entered Mrs. Gaw's office, closed the door and brandished a rope with a noose-type knot. He requested that Mrs. Gaw "tie him up." He said, "I would love to be tied up and just receive pleasure, come on let's just try it." When Mrs. Gaw complained, Etzkorn laughed at her. On numerous occasions thereafter, Etzkorn repeated the request.

29. During September, Mrs. Gaw, while in the discharge of her duties, spoke to a young female employee about inappropriate attire (tight low cut blouses and mini skirts in an elderly care facility). In response, Etzkorn angrily reprimanded Mrs. Gaw using the "fuck" word. The next day Mrs. Gaw received a memorandum that she no longer would have supervisory authority over that one employee.

30. On or about October 10, 2001, Etzkorn entered Mrs. Gaw's office and locked the door with just the two of them present. He said, "I know you think I am attractive, now is your chance, come on." Mrs. Gaw immediately asked that he unlock the door, but Etzkorn refused. His repeated demands that Mrs. Gaw give him a "hug" were interrupted only after another employee began knocking on the locked door.

31. Etzkorn's behavior was intimidating, hostile, humiliating, and created a sexually offensive work environment in violation of Title VII of Civil Rights Act of 1964, § 701, et seq., as amended (42 U.S.C. § 2000e, et seq.) and M.G.L. c. 151B, et seq. Mrs. Gaw's working conditions became so intolerable, she was forced to resign. By forcing such a hostile environment on their employee, Etzkorn, Gabriel House and Gabriel Care constructively discharged Mrs. Gaw from her employment. As a result thereof, Mrs. Gaw has suffered damages.

## COUNT II - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

32. Plaintiffs incorporate by reference and reassert the allegations contained in paragraphs one through thirty-one of the Complaint as if more fully set forth herein.

33. Defendants' conduct amounted to an extreme and outrageous nature.

34. Defendants' conduct went beyond all possible bounds of decency.

35. As a direct and proximate result thereof, the Mrs. Gaw suffered great pain of body and anguish of mind which was severe, and was otherwise damaged.

## COUNT III - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

36. Plaintiffs incorporate by reference and reassert the allegations contained in paragraphs one through thirty-five of the Complaint as if more fully set forth herein.

37. Defendants owed Mrs. Gaw a duty to refrain from intentional and unjustified sexual harassment.

38. Defendants breached that duty by committing acts of sexual harassment upon Mrs. Gaw.

39. As a direct and proximate result thereof, Mrs. Gaw suffered great pain of body and anguish of mind, and was otherwise damaged.

40. The actions of Defendants would have caused a reasonable person to suffer damages similar to Mrs. Gaw's.

## COUNT IV - BREACH OF CONTRACT

41. Plaintiffs incorporate by reference and reassert the allegations contained in paragraphs one through forty of the Complaint as if more fully set forth herein.

42. Defendant Etzkorn requested Mrs. Gaw assist him creating a detailed business plan in commencing operations in Gabriel Care Health Services, and or a business similar to Gabriel Care Health Services.

43. The parties came to a meeting of the minds on all essential terms of the contract, and Mrs. Gaw accepted Defendant Etzkorn's request, and diligently worked on a business plan to operate a successful adult foster care program.

44. In consideration of and compensation for Mrs. Gaw creating the business plan, Defendants entered in binding contract wherein Defendants promised to pay to Mrs. Gaw ten percent (10%) of the net profits of Defendants.

45. Mrs. Gaw has fully completed her obligations under the terms of the contract.

46. To date Defendants have had thousands of dollars in net profits.

47. To date Defendants have failed to honor the contract with Mrs. Gaw.

48. Defendants actions have resulted in a breach of the contract.

49. As a direct result of Defendants breach, Mrs. Gaw has suffered damages and will continue to suffer damages.

## COUNT V - UNJUST ENRICHMENT

50. Plaintiffs incorporate by reference and reassert the allegations contained in paragraphs one through forty-nine of the Complaint as if more fully set forth herein.

51. Defendant has been unjustly enriched as a result of Mrs. Gaw creating a business plan for the operation of Gabriel Health Care Services.

52. As a result of Defendants' wrongful actions, Mrs. Gaw has suffered damages and will continue to suffer damages.

## COUNT VI - NEGLIGENT LOSS OF CONSORTIUM

53. Plaintiffs incorporate by reference and reassert the allegations contained in paragraphs one through fifty-two of the Complaint as if more fully set forth herein.

54. The negligent actions of Defendants have caused personal injury to Mrs. Gaw.

55. As a direct and/or proximate result of the actions of Defendants, there has been a loss of companionship, affection and sexual enjoyment between Mr. Gaw and Mrs. Gaw.

56.   As a direct and/or proximate result of the actions of Defendants, Mr. Gaw has suffered damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in the amount of their damages, as shall be proven at trial, their reasonable attorneys fees and costs, and such other and further relief to which they may be entitled to or which the Court deems appropriate, including treble damages.

### JURY DEMAND

Plaintiffs hereby demand and reserve their right to trial by jury on all issues so triable.

>                              Respectfully submitted,
>                              Plaintiffs Catherine Gaw and
>                              Robert B. Gaw, by their attorneys,
>
>                              /s/ Frank E. Bonanni
>                              Kevin M. Considine, Esq.
>                              Frank E. Bonanni, Esq.
>                              KEVIN M. CONSIDINE, P.C.
>                              One Beacon Street, Boston, MA 02108
>                              (617) 723-9900

Dated:  January 7, 2003